## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TRINITY A. MCDOWELL,**

    **Plaintiff,**

**v.**                      **CASE NO:**

**FRED'S MARKET RIVERVIEW, LLC,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TRINITY A. MCDOWELL, (hereinafter "Plaintiff" or "Ms. McDowell"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, FRED'S MARKET RIVERVIEW, LLC (hereinafter "Defendant," or "Fred's Market") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for sexual harassment, unlawful discrimination based on gender, hostile work environment, and retaliation in violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing

Regulations; and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully subjected her to severe and pervasive sexual harassment, created and maintained a hostile work environment based on her gender, discriminated against her because of her sex, altered the terms, conditions, and privileges of her employment, and retaliated against her for opposing discriminatory practices in violation of her rights under Title VII and the FCRA.

3.     Defendant's discriminatory and retaliatory conduct included, but was not limited to: permitting and condoning sexual harassment by a male coworker who subjected Plaintiff to derogatory sexual comments, sexually suggestive gestures, spreading false sexually explicit rumors about Plaintiff, and calling her sexually derogatory names; failing to take prompt and effective remedial action to stop the harassment despite repeated complaints; retaliating against Plaintiff for complaining about the sexual harassment; and ultimately terminating her employment in retaliation for her complaints of sexual harassment and discrimination.

4.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, severe emotional distress, mental anguish, embarrassment, humiliation, and has required medical treatment for mental health conditions caused by Defendant's conduct.

5.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

7.    This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.    Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§

1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## **PARTIES**

9.     Plaintiff Trinity A. McDowell is a 23-year-old female, born November 15, 2002.

10.     Plaintiff is a member of a class protected against discrimination and retaliation based on her gender under Title VII and the FCRA.

11.     During the period from approximately May 2022 until April 11, 2025, Defendant employed Plaintiff, initially as a Cashier/Host and later promoted to Server.

12.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

13.     At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII and the FCRA.

14.     The Defendant is FRED'S MARKET RIVERVIEW, LLC, a limited liability company that operates Fred's Market Restaurant, a retail family dining and southern hospitality establishment, with its principal place of business located at 6501 US Highway 301 S, Riverview, FL 33578, Hillsborough County, Florida.

15.     Defendant also operates under the name Johnson Barbeque and has been in business since 1954, employing between 201-500 employees.

16.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida.

17.     At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII and the FCRA.

18.     Accordingly, Defendant is liable under Title VII and the FCRA for the unlawful sexual harassment, discrimination, hostile work environment, and retaliation to which it subjected Plaintiff as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

19.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

20.    On May 14, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, sex discrimination and retaliation (EEOC Charge No. 511-2025-03046).

21.    On January 16, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination against Defendant.

22.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

23.    This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

24.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

25.    In approximately May 2022, Defendant hired Plaintiff Trinity A.

McDowell as a Cashier/Host at Fred's Market Restaurant located at 6501 US Highway 301 S, Riverview, FL 33578, Hillsborough County, Florida.

26.     During the summer of 2022, Defendant promoted Plaintiff to the position of Server, where she worked primarily Saturday and Sunday double shifts, working 14-hour days each weekend while attending college full-time Monday through Friday.

27.     Throughout her employment, Plaintiff was considered one of the restaurant's top servers with the highest revenue and customer satisfaction ratings, consistently receiving positive performance reviews and earning approximately $33,000 annually.

28.     Early in her employment, Plaintiff was subjected to sexual harassment by a former cook, an older male employee, who made inappropriate sexual comments and threats toward her. Despite being aware of this harassment, Defendant took no action to address or stop the inappropriate conduct.

29.     In late 2023 or early 2024, Plaintiff briefly engaged in a consensual sexual relationship with Dwight Catlin, a 29-year-old dishwasher/kitchen employee at the restaurant.

30.     In January or February 2024, Plaintiff ended the relationship

with Mr. Catlin when she returned to her previous boyfriend.

31. Beginning in January 2024, after the relationship ended, Mr. Catlin became angry and began retaliating against Plaintiff by spreading explicitly personal and intimate information about Plaintiff around the restaurant to other employees.

32. From January 2024 onward, Mr. Catlin began calling Plaintiff derogatory names, including "homie hopper," in front of other employees, creating a humiliating and hostile work environment.

33. Throughout 2024, the harassment escalated significantly. Whenever Plaintiff entered the kitchen area to perform her job duties as a server, Mr. Catlin would make sexually suggestive gestures at her, including flicking his tongue in a lewd and offensive manner.

34. In June or July 2024, Mr. Catlin spread false and sexually explicit rumors that Plaintiff was "getting her private parts eaten" by Brandon Madris, a former dishwasher at the restaurant, further damaging Plaintiff's reputation and creating a hostile work environment.

35. On June 15, 2024, Defendant's management documented that Mr. Catlin "was very rude with Trinity," acknowledging the problematic behavior but failing to take adequate corrective action.

36.    On June 16, 2024, Mr. Catlin complained to management that Plaintiff was talking about him, attempting to deflect attention from his own harassing conduct.

37.    On June 29, 2024, Plaintiff called her manager requesting that Mr. Catlin be fired due to his ongoing harassment, but no meaningful action was taken despite her repeated complaints about his conduct.

38.    In early July 2024, Plaintiff texted HR representative Rulx Toussaint requesting a meeting to address the harassment, but no action was taken and no meeting was scheduled.

39.    On July 21, 2024, under pressure from the hostile work environment and Defendant's failure to address the harassment, Plaintiff told management that she and Mr. Catlin had "talked and squashed all their beef," hoping to reduce the tension at work.

40.    Despite Plaintiff's attempt to minimize the situation, Mr. Catlin's harassment continued unabated throughout 2024 and into 2025.

41.    Defendant's management was well aware that Mr. Catlin had a pattern of harassing female employees, as multiple female employees had complained about his behavior, and management had to hide his work schedule because other female employees would call out sick when

scheduled to work with him.

42.    In March 2025, Wayne, a dishwasher at the restaurant, confirmed to Plaintiff that Mr. Catlin had indeed started the false and sexually explicit rumors about her, corroborating what Plaintiff had suspected.

43.    On March 22, 2025, in front of witnesses including Xavier Sosa, a food runner, Mr. Catlin called Plaintiff a "hoe" and pointed at her in a degrading and humiliating manner.

44.    Plaintiff immediately reported this incident to the floor manager, who acknowledged that Mr. Catlin's conduct constituted sexual harassment and filed an incident report.

45.    On March 24, 2025, Mr. Catlin received a written reprimand for calling his coworker a derogatory name, demonstrating that Defendant was aware of the severity of his conduct but had allowed it to continue for over a year.

46.    On March 27-28, 2025, the hostile work environment created by Mr. Catlin's ongoing harassment became so intolerable that Plaintiff was forced to drop her night shifts to avoid continued harassment, resulting in a significant loss of income.

47.    On April 5, 2025, Plaintiff observed Mr. Catlin staring at her from

across the restaurant in a menacing and stalking manner, which she reported to General Manager Grant Kuhlmann.

48.    That same day, April 5, 2025, Plaintiff called her mother crying about the ongoing harassment she was enduring at work and her inability to get Defendant to take meaningful action to stop it.

49.    Also on April 5, 2025, Plaintiff's father, Lavar McDowell, a 23-year Army veteran who leads a company of 1,700 employees, came to the restaurant seeking to speak with Mr. Catlin, asking "Are you Dwight? Where is Dwight? We are going to handle something" and stating "I just want to talk to Dwight I want him to look me in my eyes and see me every time he looks at my daughter."

50.    Instead of addressing the underlying sexual harassment that prompted her father's visit, Defendant immediately retaliated against Plaintiff by writing her up for "creating a hostile work environment" and sending her home early, causing her to lose needed income.

51.    On April 6, 2025, Plaintiff worked her scheduled shift, and notably, Mr. Catlin was replaced with another dishwasher that day, demonstrating that Defendant could have taken such action much earlier to address the harassment.

52.     On April 7, 2025, General Manager Grant Kuhlmann asked Plaintiff to submit formal sexual harassment documentation, indicating that Defendant was finally taking the matter seriously.

53.     However, on April 11, 2025, instead of addressing the sexual harassment complaint, Defendant terminated Plaintiff's employment through HR representative Rulx Toussaint and General Kitchen Manager Annette Jones.

54.     Defendant stated that the termination was based on "alleged workplace violence involving her father, alleged gossip and malicious remarks, and allegedly calling her father to harass and intimidate Mr. Catlin," all of which were pretextual reasons designed to retaliate against Plaintiff for opposing the sexual harassment.

55.     Upon termination, Plaintiff was banned from the premises with threats of police involvement, and her final paycheck was mailed to her rather than provided in person.

56.     As a direct result of the sexual harassment and hostile work environment, on April 17, 2025, Plaintiff was prescribed Prozac by Dr. Scott Greaser due to the deterioration of her mental health caused by Defendant's failure to address the workplace harassment.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Sexual Harassment - Hostile Work Environment

57.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58.    Plaintiff is a 23-year-old female and a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, by virtue of her sex.

59.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

60.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

61.    Plaintiff was subjected to severe and pervasive sexual

harassment at the hands of her coworker, Dwight Catlin, who engaged in unwelcome sexual conduct that unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive work environment.

62.    The sexual harassment included, but was not limited to: spreading explicitly personal and intimate information about Plaintiff around the restaurant; calling Plaintiff derogatory sexual names including "homie hopper" and "hoe" in front of other employees; making sexually suggestive gestures including flicking his tongue in a lewd manner whenever Plaintiff entered the kitchen; spreading false and sexually explicit rumors about Plaintiff's intimate activities; and engaging in stalking behavior by staring at Plaintiff in a menacing manner.

63.    The harassment was unwelcome, and Plaintiff did not invite, encourage, or consent to the sexual harassment.

64.    The harassment was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

65.    A reasonable person in Plaintiff's position would have found the work environment to be hostile and abusive.

66.    Plaintiff subjectively perceived the work environment to be hostile and abusive.

67.    Defendant, as Plaintiff's employer, was obligated to guard against the sexual harassment of Plaintiff by her coworkers and to protect Plaintiff from harassment in the workplace.

68.    Defendant knew or should have known of the sexual harassment suffered by Plaintiff, as evidenced by: multiple complaints made by Plaintiff to management; documentation by management that Catlin "was very rude with Trinity"; the fact that other female employees had complained about Catlin's behavior; management hiding Catlin's schedule because female employees would call out sick when scheduled with him; and management's acknowledgment that Catlin's conduct constituted sexual harassment.

69.    Despite having actual knowledge of the sexual harassment, Defendant failed to take prompt and effective remedial action to stop the harassment and prevent its recurrence.

70.    Defendant violated Title VII by subjecting Plaintiff to sexual harassment and by failing to take prompt and effective corrective action to eliminate the hostile work environment once it learned of the harassment.

71.    The conduct of Defendant, by and through its employees,

supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the sexual harassment of Plaintiff, deprived her of statutory rights under Title VII.

72.    Defendant's actions and inactions constitute sexual harassment in violation of Title VII.

73.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries; and (d) medical expenses related to mental health treatment necessitated by the hostile work environment.

**WHEREFORE**, the Plaintiff, TRINITY A. MCDOWELL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FRED'S MARKET RIVERVIEW, LLC, and in favor of Plaintiff,

and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by sexually harassing Plaintiff;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the sexual harassment to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the harassment she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's sexual harassment pursuant to Title VII;

D.   Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Gender Discrimination

74.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

75.    Plaintiff is a 23-year-old female and a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, by virtue of her sex.

76.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

77.    Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a).

78.    Plaintiff was subjected to discrimination based on her gender

through disparate treatment, demeaning comments and behavior, and other discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents.

79.    Defendant subjected Plaintiff to different terms and conditions of employment because of her sex, including but not limited to: tolerating and condoning sexual harassment by male coworkers; failing to provide a workplace free from gender-based harassment; treating her complaints of sexual harassment less seriously than it would treat similar complaints from male employees; and subjecting her to disciplinary action for seeking protection from sexual harassment while taking no meaningful action against her male harasser.

80.    Defendant's discriminatory treatment of Plaintiff was motivated by gender-based animus and stereotypes.

81.    Similarly situated male employees were not subjected to the same adverse treatment that Plaintiff experienced.

82.    Defendant knew or should have known of the discrimination suffered by Plaintiff based on her gender.

83.    Defendant violated Title VII by subjecting Plaintiff to discrimination because of her gender and by failing to provide her with

equal terms and conditions of employment.

84.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under Title VII.

85.    Defendant's actions constitute gender discrimination in violation of Title VII.

86.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries; and (d) medical expenses related to mental health treatment necessitated by the discriminatory treatment.

WHEREFORE, Plaintiff, TRINITY A. MCDOWELL, requests trial by

jury of all issues so triable as of right, demands judgment against the Defendant, FRED'S MARKET RIVERVIEW, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her gender;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation

87.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

88.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

89.    Plaintiff engaged in protected activity under Title VII by opposing and complaining about sexual harassment and gender

discrimination in the workplace, including but not limited to: making repeated complaints to management about Dwight Catlin's sexual harassment; requesting that management fire Catlin for his harassing behavior; texting HR representative Rulx Toussaint requesting a meeting to address the harassment; reporting incidents of sexual harassment to floor managers; and submitting formal sexual harassment documentation as requested by management.

90. Defendant was aware of Plaintiff's protected activity, as evidenced by management's acknowledgment of her complaints, their documentation of incidents, their request for formal harassment documentation, and their issuance of a written reprimand to Catlin for his conduct toward Plaintiff.

91. Following Plaintiff's protected activity, Defendant took adverse employment actions against her, including but not limited to: disciplining Plaintiff for "creating a hostile work environment" when her father came to the restaurant to address the ongoing harassment; sending her home early and causing loss of income; failing to take meaningful action to stop the harassment despite her complaints; and ultimately terminating her employment on April 11, 2025.

92.    There was a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her, as evidenced by the temporal proximity between her complaints and the adverse actions, the pretextual nature of the reasons given for the adverse actions, and Defendant's pattern of punishing Plaintiff rather than addressing the underlying harassment.

93.    Defendant's stated reasons for the adverse employment actions, including the termination, were pretextual and designed to mask the retaliatory motive.

94.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, in retaliating against Plaintiff for engaging in protected activity, deprived her of statutory rights under Title VII.

95.    Defendant's actions constitute unlawful retaliation in violation of Title VII.

96.    As a direct, proximate, and foreseeable result of Defendant's retaliatory actions and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but

not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries; and (d) medical expenses related to mental health treatment necessitated by the retaliatory conduct.

WHEREFORE, Plaintiff, TRINITY A. MCDOWELL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FRED'S MARKET RIVERVIEW, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, by retaliating against Plaintiff;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
## VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT
### Sexual Harassment - Hostile Work Environment

97.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this

Complaint as though fully set forth herein.

98.    Plaintiff is a 23-year-old female and a member of a protected class under the Florida Civil Rights Act of 1992, as amended, Chapter 760, Florida Statutes ("FCRA"), by virtue of her sex.

99.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the FCRA.

100.    Plaintiff was subjected to severe and pervasive sexual harassment at the hands of her coworker, Dwight Catlin, who engaged in unwelcome sexual conduct that unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile, and offensive work environment.

101.    The sexual harassment included, but was not limited to: spreading explicitly personal and intimate information about Plaintiff around the restaurant; calling Plaintiff derogatory sexual names including "homie hopper" and "hoe" in front of other employees; making sexually suggestive gestures including flicking his tongue in a lewd manner whenever Plaintiff entered the kitchen; spreading false and sexually explicit rumors about Plaintiff's intimate activities; and engaging in stalking behavior by staring at Plaintiff in a menacing manner.

102.   The harassment was unwelcome, and Plaintiff did not invite, encourage, or consent to the sexual harassment.

103.   The harassment was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created an abusive working environment.

104.   A reasonable person in Plaintiff's position would have found the work environment to be hostile and abusive.

105.   Plaintiff subjectively perceived the work environment to be hostile and abusive.

106.   Defendant, as Plaintiff's employer, was obligated to guard against the sexual harassment of Plaintiff by her coworkers and to protect Plaintiff from harassment in the workplace.

107.   Defendant knew or should have known of the sexual harassment suffered by Plaintiff, as evidenced by: multiple complaints made by Plaintiff to management; documentation by management that Catlin "was very rude with Trinity"; the fact that other female employees had complained about Catlin's behavior; management hiding Catlin's schedule because female employees would call out sick when scheduled with him; and management's acknowledgment that Catlin's conduct constituted sexual harassment.

108.  Despite having actual knowledge of the sexual harassment, Defendant failed to take prompt and effective remedial action to stop the harassment and prevent its recurrence.

109.  Defendant violated the FCRA by subjecting Plaintiff to sexual harassment and by failing to take prompt and effective corrective action to eliminate the hostile work environment once it learned of the harassment.

110.  The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the sexual harassment of Plaintiff, deprived her of statutory rights under the FCRA.

111.  Defendant's actions and inactions constitute sexual harassment in violation of the FCRA.

112.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the

enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries; and (d) medical expenses related to mental health treatment necessitated by the hostile work environment.

WHEREFORE, the Plaintiff, TRINITY A. MCDOWELL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FRED'S MARKET RIVERVIEW, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the Florida Civil Rights Act by sexually harassing Plaintiff;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the sexual harassment to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the harassment she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the

nature, extent, and duration of the damages caused by Defendant's sexual harassment pursuant to the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT
### Gender Discrimination

113.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

114.   Plaintiff is a 23-year-old female and a member of a protected class under the Florida Civil Rights Act of 1992, as amended, Chapter 760,

Florida Statutes ("FCRA"), by virtue of her sex.

115.   At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the FCRA.

116.   Plaintiff was subjected to discrimination based on her gender through disparate treatment, demeaning comments and behavior, and other discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents.

117.   Defendant subjected Plaintiff to different terms and conditions of employment because of her sex, including but not limited to: tolerating and condoning sexual harassment by male coworkers; failing to provide a workplace free from gender-based harassment; treating her complaints of sexual harassment less seriously than it would treat similar complaints from male employees; and subjecting her to disciplinary action for seeking protection from sexual harassment while taking no meaningful action against her male harasser.

118.   Defendant's discriminatory treatment of Plaintiff was motivated by gender-based animus and stereotypes.

119.   Similarly situated male employees were not subjected to the same adverse treatment that Plaintiff experienced.

120.   Defendant knew or should have known of the discrimination suffered by Plaintiff based on her gender.

121.   Defendant violated the FCRA by subjecting Plaintiff to discrimination because of her gender and by failing to provide her with equal terms and conditions of employment.

122.   The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination against Plaintiff, deprived her of statutory rights under the FCRA.

123.   Defendant's actions constitute gender discrimination in violation of the FCRA.

124.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and

other nonpecuniary losses and intangible injuries; and (d) medical expenses related to mental health treatment necessitated by the discriminatory treatment.

**WHEREFORE**, the Plaintiff, TRINITY A. MCDOWELL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FRED'S MARKET RIVERVIEW, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the Florida Civil Rights Act by discriminating against Plaintiff based on her gender;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the

nature, extent, and duration of the damages caused by Defendant's discriminatory conduct and actions pursuant to the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.      Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VI
## VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT
### Retaliation

125.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

126.  At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the FCRA.

127.  Plaintiff engaged in protected activity under the FCRA by opposing and complaining about sexual harassment and gender discrimination in the workplace, including but not limited to: making repeated complaints to management about Dwight Catlin's sexual harassment; requesting that management fire Catlin for his harassing behavior; texting HR representative Rulx Toussaint requesting a meeting to address the harassment; reporting incidents of sexual harassment to floor managers; and submitting formal sexual harassment documentation as requested by management.

128.  Defendant was aware of Plaintiff's protected activity, as evidenced by management's acknowledgment of her complaints, their documentation of incidents, their request for formal harassment documentation, and their issuance of a written reprimand to Catlin for his conduct toward Plaintiff.

129.  Following Plaintiff's protected activity, Defendant took adverse employment actions against her, including but not limited to: disciplining Plaintiff for "creating a hostile work environment" when her father came to

the restaurant to address the ongoing harassment; sending her home early and causing loss of income; failing to take meaningful action to stop the harassment despite her complaints; and ultimately terminating her employment on April 11, 2025.

130.  There was a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her, as evidenced by the temporal proximity between her complaints and the adverse actions, the pretextual nature of the reasons given for the adverse actions, and Defendant's pattern of punishing Plaintiff rather than addressing the underlying harassment.

131.  Defendant's stated reasons for the adverse employment actions, including the termination, were pretextual and designed to mask the retaliatory motive.

132.  The conduct of Defendant, by and through its employees, supervisors, managers, and agents, in retaliating against Plaintiff for engaging in protected activity, deprived her of statutory rights under the FCRA.

133.  Defendant's actions constitute unlawful retaliation in violation of the FCRA.

134.    As a direct, proximate, and foreseeable result of Defendant's retaliatory actions and violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries; and (d) medical expenses related to mental health treatment necessitated by the retaliatory conduct.

WHEREFORE, Plaintiff, TRINITY A. MCDOWELL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, FRED'S MARKET RIVERVIEW, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the Florida Civil Rights Act by retaliating against Plaintiff;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the retaliation to which Defendant subjected her, including, but not limited to,

front pay in lieu of reinstatement, full backpay with interest, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation she has endured;

C.   Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of the damages caused by Defendant's retaliatory conduct and actions pursuant to the FCRA;

D.   Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.   Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.   Grant such other and further relief as this Court may deem equitable, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Date this 27th day of February 2026.

*/s/ Jason W. Imler, Esq*

Jason W. Imler

Florida Bar No. 1004422

Alberto "Tito" Gonzalez

Florida Bar No. 1037033

**Imler Law**

23110 State Road 54, Unit 407

Lutz, Florida 33549

(P): 813-553-7709

Jason@ImlerLaw.com

Tito@ImlerLaw.com

Ashley@ImlerLaw.com

Tiffany@ImlerLaw.com
